UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TROY L. JONES,

        Plaintiff,

v.

DEBORAH MARCULES, *et al.*,

        Defendant.

_____/

Case No. 1:10-cv-613

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner.  This matter is now before the court on plaintiff's motion for leave to file an amended complaint (docket no. 15), plaintiff's motion to compel discovery (docket no. 27), defendants' "motion for dismissal and summary judgment" (docket no. 31), and plaintiff's cross-motion for summary judgment (docket no. 45).

**I.      Plaintiff's claims**

Plaintiff's claim arose while he was a pre-trial detainee.  Plaintiff was arrested on October 11, 2008, charged with two counts of assault with intent to do great bodily harm less than murder, M.C.L. § 750.84, and housed in the Allegan County Jail.  Compl. at ¶ V (docket no. 1); *People v. Jones*, Nos. 292793 and 292794, 2011 WL 4467686 at *1 (Mich. App. Sept. 27, 2011). While at the jail, plaintiff was charged with the separate crime of witness tampering, M.C.L. § 750.122(7)(b), which arose from his offer to pay one of the victims $1,000.00 for either refusing to testify or for testifying in a specified manner.  *Jones*, 2011 WL 4467686 at *1.  Plaintiff was convicted of one charge of assault and the witness tampering.  *Id.*  He was sentenced as a fourth habitual offender, M.C.L. § 769.12, to two consecutive terms of 28 to 72 months for the witness

tampering and 10 to 20 years for the assault.  *Id.* Plaintiff remained in the custody of the Allegan County Jail until June 18, 2009, when he was transferred to the custody of the Michigan Department of Corrections (MDOC). Compl. at ¶ V.  The Michigan Court of Appeals affirmed his convictions on September 27, 2011.  *Jones*, 2011 WL 4467686.

While his criminal appeal was pending, plaintiff filed the present  § 1983 action to challenge the constitutionality of the Allegan County Jail's inspection of his mail while he was a pre-trial detainee.  Plaintiff's complaint alleged in pertinent part as follows (in his words):

While in custody at the jail awaiting adjudication on charges plaintiff wrote a  letter, a personal non-privileged letter, to a male friend and placed it in the outgoing mail.  This letter instructed the friend to show this letter to the complainant, a friend of his.  This letter contained NO intimidation or threats of any kind.  On 11/5/08 plaintiff was charged with witness bribery/intimidation - MCL 750.12278.

Sometime around the end of December '08 or the first week of January '09 (exact date unknown as plaintiff could not secure a copy of order) an order was placed by the Allegan County Prosecutors Office with the Jail Administrator - Deb Marcules and the Detective Division for ALL of plaintiffs mail to be opened by jail staff, read by jail staff, then copied by jail staff.  Staff was then directed, per the order, to forward copies to both the prosecutors office the detective bureau and possibly "other" third parties.  The mail was then resealed with clear tape and placed in the outgoing mail.

The order placed by the Prosecutors Office included the following correspondence:

a.    Incoming personal/non-privileged correspondence addressed to plaintiff

b.    Outgoing personal/non-privileged correspondence (mail matter) that was in a properly addressed envelope with proper amount of postage and was SEALED

c.    Incoming legal mail/privileged correspondence that was properly addressed to me in an envelope that had the proper amount of postage.  These envelopes were received at the jail sealed.  ALL this mail was readily identifiable as "private, personal, legal/privileged correspondence".

2

d.      Out going SEALED legal mail that had been placed in a properly addressed envelope that had the proper amount of postage. ALL this correspondence was sealed when it was handed to jail staff to be placed in US Mail. Every envelope was identified with markings that clearly identified it as legal/privileged correspondence, i.e. legal/ privileged mail, private and confidential, atty/client correspondence, to be opened by party it is addressed to, etc.

Compl. at ¶ V.

Plaintiff alleged that the following defendants participated in the violations involving his mail: District Attorney Frederick Anderson (whose office issued the order); Prosecutor Robert Kengis (who received all copies of the mail); Sheriff Blaine Koops (who allowed his subordinates to follow and enforce the order from the prosecutor's office); Lt. Deborah Marcules (who received and enforced the prosecutor's order); Lt. Scott Matice (who received and enforced order and read mail); Detective Chris Haverdink (who received order, read all mail and forwarded it to the prosecutor's office); Detective Brent Ensfield (same); Sergeant Floyd Decker (who "enforced order through his subordinates;" read mail, made copies of mail and forwarded mail to the prosecutor and detectives); Sergeant Sexton (same); Deputy Tim Commissaris (who opened sealed mail, read it and copied it "per order"); and Deputy Rachel Morrissette (same). *Id.* Plaintiff seeks $17,000,000.00 in damages from defendants. *Id.*

In resolving motions to dismiss, the court has a duty to construe a *pro se* complaint liberally. *See Haines v. Kerner*, 404 U.S. 519 (1972); *Kent v. Johnson*, 821 F. 2d 1220, 1223-24 (6th Cir. 1987). However, there are limits to the court's "liberal construction" of a *pro se* complaint. For example, the court cannot rewrite a complaint to include claims that were never presented, "conjure up unpled allegations" or "create a claim." *Rogers v. Detroit Police Dept.*, 595 F. Supp.2d 757, 766 (E.D. Mich. 2009). To hold otherwise would require the court to explore all

3

potential claims of a *pro se* plaintiff and transform the district court to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party. *Id.*

Mindful of these limits of liberal construction, and in light of the arguments as set forth in plaintiff's cross-motion for summary judgment, the court concludes that plaintiff's complaint raises four claims. First, plaintiff claims that defendants violated his First Amendment right "to free an[d] unabridged speech, especially in his legal correspondence." *See* Plaintiff's Brief in support of cross-motion at p. 3 (docket no. 46).[1] Second, plaintiff claims that defendants violated his Fourth Amendment right to be free from an illegal warrantless search and seizure (i.e., copying) of his mail. *Id.* Third, plaintiff claims that defendants violated his Fifth Amendment right not to incriminate himself. *Id.* Fourth, plaintiff claims that defendants violated his Sixth Amendment right to counsel "which of course allows for private and confidential communications between attorney and client." *Id.*

## II.      Procedural Background

After defendants filed their answer, the court issued a case management order setting deadlines for discovery and dispositive motions. While discovery was in progress, plaintiff moved to amend his complaint to add five defendants. *See* Plaintiff's Motion for leave to amend (docket no. 15). A few weeks prior to the expiration of the discovery deadlines, plaintiff moved to compel discovery of requests for production. *See* Plaintiff's Motion to compel (docket no. 27). In response

---

[1] In their dispositive motion, defendants have viewed plaintiff's complaint as including a First Amendment access to the courts claim. The court does not construe the complaint as including this claim. To state a claim for interference with access to the courts, a prisoner must show an actual injury or prejudice connected to the pursuit of a non-frivolous legal claim challenging their convictions or conditions of confinement. *Lewis v. Casey*, 518 U.S. 343, 3555-56 (1996); *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578. Here, plaintiff did not allege that he suffered any such prejudice or injury.

4

to defendants' motion to dismiss and for summary judgment, plaintiff filed a 39-paragraph affidavit and 85 pages of exhibits. *See* Plaintiff's Response (docket no. 41). Plaintiff then filed his own motion for summary judgment. *See* Plaintiff's Cross-motion for summary judgment (docket no. 45).

### III. Defendants' motion to dismiss pursuant to Fed. Rules Civ. Proc. 12(b)(1) (docket no. 31)

### A. Legal Standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Defendants contend that plaintiff's claims should be dismissed for lack of subject matter jurisdiction pursuant to Fed. Rules Civ. Proc. 12(b)(1), because they are barred by the *Rooker-Feldman* doctrine. In determining whether the district court has subject matter jurisdiction under this rule, the court must assume that the plaintiff's allegations are true and must construe the allegations in a light most favorable to plaintiff. *Little Traverse Bay Bands of Odawa Indians v. Great Spring Waters of America, Inc.*, 203 F.Supp.2d 853, 855 (W.D. Mich. 2002). "Relief is appropriate only if, after such construction, it is apparent to the district court that there is an absence of subject matter jurisdiction." *Id.*

### B.      Discussion

The *Rooker-Feldman* doctrine is not a jurisdictional bar in this case.  The *Rooker-Feldman* doctrine arose from two Supreme Court decisions interpreting U.S.C. § 1257(a), a statute which "is designed to prohibit end-runs around state court judgments that might occur when parties go into federal court essentially seeking a review of a state-court decision." *Kovacic v. Cuyahoga County Department of Children and Family Services*, 606 F.3d 301, 308 (6th Cir. 2010). Application of the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corporation v. Saudi Basic Industries Corporation*, 544 U.S. 280, 284 (2005). *See Verizon Maryland, Inc. v. Public Service Commission of Maryland*, 535 U.S. 635, 644, n. 3 (2002) ("[t]he *Rooker-Feldman* doctrine merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments, which Congress has reserved to this Court, *see* § 1257(a)"). Given these limitations, the Sixth Circuit has concluded "that the *Rooker-Feldman* doctrine applies only when a plaintiff complains of injury from the state-court judgment itself." *Carter v. Burns*, 524 F.3d 796, 798 (6th Cir. 2008).

Plaintiff first raised his mail interception claim as a pre-trial matter in his state criminal prosecution.  When plaintiff's defense counsel raised this issue in the context of motion to withdraw, the trial judge denied counsel's motion stating in pertinent part, "I don't find this matter of seizure of communications or opening letters has impaired the attorney/client privilege in any serious or substantial way." *See People v. Jones*, No. 08-16032-FH (45th Cir. Ct.), Motion Trans.

6

at p. 37 (April 27, 2009) (docket no. 9-4 at p. 43).  When plaintiff's counsel expressed concern that

he might be called as a witness in a federal civil rights action involving the mail opening incidents,

the court observed that any such future civil litigation was an entirely different matter from the

present criminal proceeding:

> There's no lawsuit of its kind before the Court.  In fact on the facts that we
> have before us right now, you know, such a federal lawsuit might be disposed of by
> summary disposition against the plaintiff, but that's in the category of speculation.
> I really can't say how the proofs would frame up.  What I can say is that I see no
> impact on the prosecution of this case that the opening of any of these mails or their
> "seizure" has benefitted the prosecution or put the defendant at any material,
> observable disadvantage.  .  .  .

*Id.*, Motion Trans. at p. 39.

After defendants filed their dispositive motion in the present  § 1983 action, the

Michigan Court of Appeals affirmed plaintiff's convictions.  The appellate court's decision made

relevant findings of fact and addressed some aspects of plaintiff's mail interception claims, stating

in pertinent part as follows:

> After it was discovered that defendant sent the witness tampering letter on
> October 28, 2008, jail officials began opening all of defendant's incoming and
> outgoing mail at the jail, unless it was clearly marked as an attorney communication.
> The mail was copied and forwarded the Allegan County Sheriff's Department, who
> in turn forwarded it to the prosecutor.  When defendant became aware of this
> practice, he raised the issue in a pretrial hearing at which he argued that the seizure
> of his mail for copying and its dissemination violated his constitutional rights.  The
> trial court denied the motion because it concluded that the material was either
> non-privileged because it was sent through third parties, or privileged, but defendant
> could not show any prejudice.

> After trial, defendant filed a motion for a new trial reiterating his argument
> regarding the improper seizure and dissemination of his mail, asserting that the
> prosecution was able to tailor its case based on the information it received in the
> mail.  The trial court denied this motion.

> A new trial may be granted for any ground set forth in MCR 2.611(A)(1), on
> any ground that would support reversal on appeal, or because the verdict resulted in

7

a miscarriage of justice.  MCR 6.431(B); *People v. Brown*, 279 Mich.App 116, 144; 755 NW2d 664 (2008).  On appeal, defendant asserts that the seizure of his legal mail for copying and dissemination, regardless of whether it was contained in an envelope from a third party, constituted an intentional violation of his right to private communication with his attorney, and requires that his convictions be vacated and the charges dismissed with prejudice.  He contends that this type of violation is structural in nature and that the trial court erroneously required him to prove prejudice.  He alternatively argues that, at a minimum, he is entitled to a new trial at which the Allegan County Prosecutor's Office and the sheriff's department must be disqualified.

Under the United States and Michigan Constitutions, a defendant in a criminal prosecution is entitled to counsel.  US Const, Ams VI and XIV; Const 1963, art 1, § 20.  A defendant's right to counsel under the state constitution is generally the same as that guaranteed by the United States Constitution.  *People v. Reichenbach*, 459 Mich. 109, 118; 587 NW2d 1 (1998).  Generally, in Michigan, persons incarcerated in jail while awaiting trial are entitled to the protections guaranteed by the Fourth Amendment.  *People v. Williams*, 118 Mich.App 117, 120; 325 NW2d 4 (1982).  However, this Court has held that there is no Fourth Amendment violation when an inmate's non-privileged mail is seized and read by jail officials.  *Id.* at 121, citing  *Stroud v. United States*, 251 U.S. 15; 40 S Ct 50; 64 L Ed 103 (1919); see also *People v. Oliver*, 63 Mich.App 509, 515; 234 NW2d 679 (1975) (jail authorities have a right to open, read, and confiscate inmate mail for internal security reasons).

An inmate's communications with his attorney are afforded special protections.  As observed in *People v. Waclawski*, 286 Mich.App 634, 693–694; 780 NW2d 321 (2009), quoting *Ravary v. Reed*, 163 Mich.App 447, 453; 415 NW2d 240 (1987):

> "The attorney-client privilege attaches to communications made by a client to his or her attorney acting as a legal adviser and made for the purpose of obtaining legal advice on some right or obligation.  *Alderman v. The People*, 4 Mich. 414, 422 (1857); *Kubiak v. Hurr*, 143 Mich.App 465, 472–473; 372 NW2d 341 (1985).  The purpose of the privilege is to allow a client to confide in his or her attorney secure in the knowledge that the communication will not be disclosed.  *Id.*, 473.  The privilege is personal to the client, who alone can waive it.  *Passmore v. Passmore's Estate*, 50 Mich. 626, 627; 16 NW 170 (1883)."

The attorney-client privilege includes both the security against publication and the right to control the introduction into evidence of such information or

knowledge communicated to or possessed by the attorney. *Leibel*, 250 Mich.App at 240.

However, the protection is not absolute. "Once otherwise privileged information is disclosed to a third party by the person who holds the privilege, or if an otherwise confidential communication is necessarily intended to be disclosed to a third party, the privilege disappears." *Oakland Co Prosecutor v. Dep't of Corrections*, 222 Mich.App 654, 658; 564 NW2d 922 (1997). For instance, in *People v. Compeau*, 244 Mich.App 595, 597–598; 625 NW2d 120 (2001), the Court held that a communication was not privileged where the defendant failed to take reasonable precautions to keep his conversation between himself and his attorney confidential.

We conclude that the trial court properly ruled that some of defendant's mail, which contained copies of defendant's letters to his attorney, was not privileged. The letters were each contained in an envelope sent to defendant from his father, a third party. It is unknown how defendant's father came to possess copies of the letters that defendant wrote to defense counsel, but his possession was purposeful. Defendant's father mailed the copied letters to defendant at defendant's request. Because defendant allowed the letters to be shared with his father, the communications lost their privileged status. *Leibel*, 250 Mich.App at 240 (valid waiver requires intentional, voluntary act); *Compeau*, 244 Mich.App at 597–598. Therefore, defendant's Sixth Amendment right to counsel was not affected. Also, the letters' subsequent seizure by jail officials, and any use by the prosecutor if such had been established, did not violate his Fourth Amendment rights. *Williams*, 118 Mich.App at 121.

However, two of the letters were clearly privileged legal mail. One was an incoming letter to defendant from defense counsel, in an envelope clearly marked as such. The other was an outgoing multi-page letter also in an envelope clearly marked to defense counsel. Therefore, the opening of this mail was an impermissible intrusion. The critical question is whether the trial court properly required defendant to show that he was prejudiced by these intrusions.

In *People v. Iaconnelli (On Rehearing)*, 116 Mich.App 176, 177; 321 NW2d 684 (1982), this Court reversed its previous decision granting the defendant a new trial on the ground that his Sixth Amendment right to counsel was impermissibly invaded. This Court found no prejudice to the defendant where there was a lack of evidence showing that any trial strategy was communicated to the prosecution. *Id.* The prosecution had questioned a codefendant, who previously had the same attorney as the defendant, regarding defense strategies before he became a prosecution witness. *People v. Iaconnelli*, 112 Mich.App 725, 737; 317 NW2d 540 (1982).

9

Therefore, we conclude that Michigan courts favor requiring a finding of prejudice before an intentional governmental intrusion will be determined to be a Sixth Amendment violation. The existing record demonstrates that the trial court did not clearly err in its factual finding that the prosecutor did not use any information to defendant's disadvantage, i.e., that defendant suffered no prejudice. *See Dendel*, 481 Mich. at 114. Accordingly, the trial court did not abuse its discretion in its ultimate decision to deny defendant's motion for new trial. *See Miller*, 482 Mich. at 544.

*Id.*, 2011 WL 4467686 at *1-4 (footnotes omitted).

The record reflects that the Michigan trial and appellate courts addressed plaintiff's claims relevant to the communications with his attorney during the criminal proceedings. However, the state trial court did not enter a civil judgment on plaintiff's § 1983 claims regarding the alleged illegal mail interception. Because plaintiff is not complaining of an "injury from the state-court judgment itself," the *Rooker-Feldman* doctrine is inapplicable. Accordingly, defendants' motion to dismiss pursuant to Fed. Rules Civ. Proc. 12(b)(1) (docket no. 31) should be denied.**[2]**

IV.    **Defendants' motion for summary judgment (docket no. 31) and plaintiff's cross-motion for summary judgment (docket no. 45)**

A.    **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[2] The court notes that this case could conceivably involve an application of the *Younger* abstention doctrine, which counsels federal courts to abstain from adjudicating a matter in deference to ongoing state criminal proceedings. *See Devlin v. Kalm*, 594 F.3d 893, 894-95 (6th Cir. 2010), citing *Middlesex Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 434-35 (1982) and *Younger v. Harris*, 401 U.S. 37, 44 (1971). *See, e.g., Cooper v. Parrish*, 203 F.3d 937, 954 (6th Cir. 2000) (under the *Younger* abstention doctrine, federal courts should abstain when "(1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims") (internal quotation marks omitted). However, defendants have not asserted *Younger* abstention in this case.

Fed. R. Civ. P. 56(a).   Rule 56 further provides that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by":

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case.  Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment.  The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted).  "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party."  *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  However, the court is not bound to blindly adopt a non-moving party's version of the facts.  "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### B.    Discussion

Defendants' motion for summary judgment addressed plaintiff's First Amendment claim to send and receive mail and his Sixth Amendment claim regarding interference with the right to counsel.  In his cross motion for summary judgment, plaintiff raised two constitutional violations (which are not readily apparent from his complaint), i.e., a violation of his Fourth Amendment right to be free from illegal searches and seizures and a violation of his Fifth Amendment right against self incrimination.

### 1.    First Amendment claim

Plaintiff has alleged First Amendment claims related to both his right to receive mail and his right to send mail.  "A prisoner's right to receive mail is protected by the First Amendment." *Sallier v. Brooks*, 343 F.3d 868, 873 (6th Cir. 2003).  However, this right "is subject to prison policies and regulations that are reasonably related to legitimate penological interests, such as security, good order, or discipline of the institution." *Harbin-Bey*, 420 F.3d at 578, quoting *Turner*, 482 U.S. at 89 and *Thornburgh v. Abbott*, 490 U.S. 401, 404 (1989) (internal quotation marks and citations omitted).  Similarly, "[a] prisoner has a First Amendment right to send mail," which is subject to  prison policies and regulations that are reasonably related to legitimate penological interests. *Rodgers v. Hawley*, 14 Fed. Appx. 403, 408 (6th Cir. 2001), citing *Hudson v. Palmer*, 468 U.S. 517, 547 (1984) and *Turner*, 482 U.S. at 89.

Allegan County Jail's policy with respect to inmate mail provided in pertinent part as follows:

> Incoming Mail: All incoming mail and packages will be opened and inspected for contraband by correctional personnel.  Properly identified incoming attorney and court mail for an inmate can be opened only in the presence of the inmate, and its confidentiality shall be maintained. . . . .

Outgoing Mail: All outgoing mail will be sent unopened, unless there are reasonable grounds to believe that the correspondence is in violation of the law, postal regulations, jail rules, or the inmate is suicidal or plotting against security and/or planning criminal activity.

* * *

Receiving and sending mail is a legal right for all inmates. Abuse of this right may result in increased monitoring of mail.

Allegan County Jail Guide (docket no. 9-3 at p. 10).

Plaintiff contends that defendants did not apply these rules appropriately in his case, because defendants' actions were not taken to advance a legitimate penological purpose. *See generally*, *Turner v. Safley*, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests"). The court disagrees. The Allegan County authorities were presented with evidence that plaintiff had mailed a witness tampering letter from the Allegan County Jail. Given this background, the Allegan County authorities had a legitimate penological purpose in monitoring plaintiff's mail, i.e., the authorities had "reasonable grounds to believe that the correspondence is in violation of the law . . . or the inmate is . . . plotting against security and/or planning criminal activity." Defendants' motion for summary judgment should be granted on this claim.

**2.      Sixth Amendment claim**

Plaintiff contends that defendants' actions violated his Sixth Amendment right to counsel. "In order to state a § 1983 cognizable claim for deprivation of right to counsel, there must be some allegation indicating an interference with the prisoner's relationship with counsel." *Stanley v. Vining*, 602 F.3d 767, 770 (6th Cir. 2010). In this regard, a plaintiff prisoner must allege that the objectionable conduct by prison or jail staff "created [a] barrier to the prisoner's relationship with

13

counsel." *Id.  See, e.g., Mooney v. Wilson*, No.6:11-cv-00098, 2011 WL 4345853 at 6 (E.D. Ky. Sept. 14, 2011) ("to state a Sixth Amendment claim for deprivation of right to counsel through interference with legal mail, the plaintiff must allege that the interference created a barrier to his relationship with his counsel" citing *Stanley*, 602 F.3d at 770).  Plaintiff's Sixth Amendment claim fails because he has neither alleged nor demonstrated that the inference with his legal mail "created any barrier" to his relationship with counsel during the criminal proceeding.[3]   Accordingly, defendants' motion for summary judgment should be granted on this claim and plaintiff's cross-motion for summary judgment should be denied on this claim.

### 3.      Fourth and Fifth Amendment claims

Plaintiff's allegations fail to state a Fourth or Fifth Amendment claim upon which relief can be granted. A prison's practice of intercepting inmate mail and delivering it to prosecutors for use at trial is not a practice which impinges upon a prisoner's Fourth or Fifth Amendment rights. *See Bridges v. Cason*, 198 Fed. Appx. 491, 495-96 (6th Cir. 2006), citing *Stroud*, 251 U.S. at 21-22 (holding that a prisoner's voluntarily written letters, which were turned over to a prison warden under the established practice of the prison and furnished to the district attorney, involved neither "testimony required of the accused, nor unreasonable search and seizure, in violation of his constitutional rights").  Furthermore, a prisoner cannot state a Fifth Amendment claim arising from intercepted mail unless the prisoner demonstrates that he was "somehow compelled to write a letter." *See Bridges*, 198 Fed. Appx. at 496, citing *Hiibel v. Sixth Judicial District Court of Nevada, Humboldt County*, 542 U.S. 177, 189 (2004) ( "[t]he Fifth Amendment prohibits only compelled

---

[3] In this regard, the court notes that the Michigan Court of Appeals found that plaintiff suffered no prejudice from the Allegan County Jail's interception of the two pieces of correspondence between plaintiff and his attorney.  *See Jones*, 2011 WL 4467686 at *1-4.

testimony that is incriminating") and *Oregon v. Elstad*, 470 U.S. 298, 306–07 (1985) ("[t]he Fifth Amendment prohibits use by the prosecution in its case in chief only of *compelled* testimony") (emphasis in original).  Accordingly, plaintiff's cross-motion for summary judgment should be denied on these claims.

### V.    Plaintiff's motion for leave to file an amended complaint (docket no. 15)

Plaintiff has moved for leave to file an amended complaint.  *See* docket no. 15.  Fed. R. Civ. P. 15(a)(2) provides that a party may amend its pleading only with the court's leave and that "[t]he court should freely give leave when justice so requires."  In making this determination, the court may deny the motion as futile if it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Campbell v. BNSF Railway Company*, 600 F.3d 667, 677 (6th Cir. 2010) ("[t]o overcome a Rule 12(b)(6) dismissal, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, and state a claim to relief that is plausible on its face") (internal quotation marks and brackets omitted).

As an initial matter, plaintiff's motion for leave to amend is not properly before the court.  Motions filed in this court must be accompanied by a supporting brief, which "shall contain a concise statement of the reasons in support of the party's position and shall cite all applicable federal rules of procedure, all applicable local rules, and the other authorities upon which the party relies."  W.D. Mich. LCivR 7.1(a).  For this reason, the motion for leave to amend should be denied as improperly filed.

Furthermore, the motion should be denied as futile.  The proposed amended complaint seeks to add five Allegan County employees as defendants, i.e., Sergeant Mike Russell, Sergeant [unknown] DeBoer, Deputy Beth "Haverdink/Dubdink," Jeremy VerSluys, and Deputy

15

Nancy [unknown].  *See* Motion for leave to amend at ¶ 3.  Four of these defendants were listed in the original complaint as being "other parties aware of order and actions concerning my (plaintiffs) [sic] mail."  Compl. at ¶ V.  While the proposed amended complaint provides additional factual allegations against each defendant, and lowers the punitive damage demand from $17,000,000.00 to $50,000.00, it does not address the deficiencies in the original complaint.  *See* §§ I-V, *supra*.  Accordingly, plaintiff's motion for leave to file an amended complaint (docket no. 15) should be denied.

### VI.      Plaintiff's motion to compel (docket no. 27)

Finally, plaintiff seeks to compel certain discovery.  In his motion, plaintiff has attached an "Initial Discovery Request" which he states was sent to defendants' counsel on February 3, 2011.  *See* Initial Discovery Request (docket no. 29-1). This request includes at least 23 separate categories of documents.  *Id.* Defendants did not file a response to this request.  The court does not condone defendants' failure to respond to this motion.  Nevertheless, plaintiff's request was excessive and improper under the case management order, which stated that "[n]o party may serve requests for the production of documents seeking more than five categories of documents."  *See* Case Management Order at ¶ 2(c) (docket no. 11).

Plaintiff's response to the motion to dismiss and for summary judgment (docket no 41) sought to stay or deny defendants' motion due to defendants' failure to comply with his discovery request.  However, plaintiff's request was not accompanied by an affidavit or declaration as required under Fed. Rules Civ. Proc. 56(d) (formerly 56(f)) (" If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or

16

declarations or to take discovery; or (3) issue any other appropriate order."). Denying a Rule 56(d) motion and ruling on a motion for summary judgment, when the parties have no opportunity for discovery, is "likely to be an abuse of discretion." *Siggers v. Campbell*, 652 F.3d 681, 696 (6th Cir. 2011). However, there would be no abuse of discretion in this case because the parties had an opportunity for discovery, plaintiff served discovery requests that were clearly improper under the court's case management order, and plaintiff failed to provide the declaration or affidavit required under Rule 56(d). Accordingly, plaintiff's motion to compel should be denied.

## VII.    Recommendation

For the reasons set forth above, I respectfully recommend that defendants' motion to dismiss pursuant to Fed. Rules Civ. Proc. 12(b)(1) (docket no. 31) be **DENIED**.

I further recommend that defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) (docket no. 31) be **GRANTED**.

I further recommend that plaintiff's motion for leave to file an amended complaint (docket no. 15), motion to compel discovery (docket no. 27), and cross-motion for summary judgment (docket no. 45) be **DENIED**.

I further recommend that plaintiff's action be **DISMISSED**.

Dated: February 8, 2012          /s/ Hugh W. Brenneman, Jr.
                                                 HUGH W. BRENNEMAN, JR.
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).